**Opinion filed July 23, 2026**



# In The

# Eleventh Court of Appeals

_____

## No. 11-24-00196-CR

_____

## ROGELIO GUTIERREZ GALLEGOS, JR., Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 132nd District Court**
**Scurry County, Texas**
**Trial Court Cause No. 23-208-DCCR-11207**

## M E M O R A N D U M   O P I N I O N

The jury convicted Appellant, Rogelio Gutierrez Gallegos, Jr., for the murder of Robert Riojas. *See* TEX. PENAL CODE ANN. 19.02(b)(2) (West Supp. 2025). At punishment, Appellant pleaded "true" to the State's enhancement allegation. The jury assessed his punishment at confinement for life in the Institutional Division of the Texas Department of Criminal Justice. In a single issue on appeal, Appellant contends that there was insufficient evidence to support his conviction. We affirm.

*Background Facts*

On the evening of September 13, 2023, Detective Joshua Reeves with the Snyder Police Department responded to a call of an unresponsive man found in the alley between 42nd and 43rd Street in Snyder. When he arrived, Detective Reeves observed the victim, Riojas, lying face down in the alley with multiple stab wounds. He also discovered a large bloodstain on the side of a storage building approximately seventy-five yards down the alley. Detective Reeves described a trail of blood droplets that led from Riojas's body down the alley to the storage building. After further investigation of the scene, officers located a putter head from an iron golf club west of the shed. Photographs taken at the scene showed Roijas on the ground covered in a large amount of blood, the large bloodstain on the side of the shed, and the detached putter head located near the shed.

After officers identified Riojas from his tattoos and their prior knowledge of him, Detective Reeves was advised that Riojas had been living with his girlfriend, Lashekka Gallegos. Lashekka's home was 250 yards west of the shed.

Detective Reeves determined that he needed to speak to Lashekka and John Ramirez, as the two had been seen walking through the alley during their investigation of the scene. Lashekka and Ramirez went voluntarily with officers to the police station and were interviewed in the early morning hours of September 14. Lashekka was also interviewed a second time at 7:50 a.m. that same day.

Officers learned that Riojas, Lashekka, her and Appellant's son, K.G., and daughter, K.G.2, lived at Lashekka's residence on 42nd street. On the night of the incident, her friend, John Ramirez, was over for a visit. According to Lashekka, Riojas came home that night intoxicated, and when he walked into her bedroom, he fell over a bench. This fall caught the attention of her son, K.G., who came into the room. When Riojas saw K.G., Riojas threw his hands up in the air in a "what's up"

gesture and hit Lashekka in the mouth, busting her lip. When Riojas realized what he had done, he left the room and walked out of the front door of the residence.

Lashekka left the residence shortly after to meet someone at United Supermarket. She testified that, when she returned, she "just went right to [her] room." She stated that her air conditioner and music were loud, so she was unaware of the people coming in and going out of the home at that time, and she could not remember who she specifically encountered in her home that evening. She eventually walked out into the carport area and asked Ramirez and K.G. whether Riojas had come back; they said he had not. She and Ramirez went to look for Riojas and encountered a police officer who informed them that they could not be in the alley, so they went back to the house.

Officers obtained Lashekka's consent to search her residence, and during the search, they located in Lashekka's bedroom the shaft to the putter head found in the alley. The shaft was bent and missing its head, and Riojas's blood was found on it.

After their search of the residence, officers asked to speak with K.G. He was taken to the police station and interviewed at approximately 5:00 a.m. on September 14. K.G. initially told investigators that a man named Malcolm Harrell had come by the house the prior evening and that Riojas had left with him out of the back door of the home. When officers later spoke with Lashekka again, she stated that she was unaware of Harrell coming to the home that night, and if he had, police would be able to see him on the camera that she had mounted in the carport. Police then obtained the footage with Lashekka's cooperation.

The motion-activated camera mounted in the carport area allowed officers to see when people drove up and walked through the back door of the residence. Detective Reeves segmented the footage from that night into three clips depicting the times before, during, and after the incident took place. The video just before the incident began when Lashekka and Riojas arrived at the residence and entered

3

through the back door at approximately 9:20 p.m. Riojas is not seen on the footage again after this. Her son, K.G., entered the back door shortly after. Several minutes later, Lashekka, K.G., and Ramirez walked out of the back door and into the carport area, and Lashekka left for United Supermarket in her car at 9:38 p.m. Just before driving away, Lashekka checked her lip in the car's rearview mirror.

Less than a minute after Lashekka left, a pickup pulled into the driveway, and Appellant, his and Lashekka's oldest daughter Kela Gallegos, Kela's boyfriend Loneiyea Tristan Keari Weaver, and the driver, Barry Farquar,[1] got out. Ramirez and K.G. met and spoke to the group in the carport area. Appellant then walked to the alley at 9:41 p.m., and the others followed behind him. The group returned to the carport area a few seconds later, and Appellant and Farquar emptied their pockets while K.G., Kela, and Weaver went inside the residence. Appellant, Farquar, and K.G. went back into the alley at 9:43 p.m., and Kela and Weaver exited the residence; Weaver had a golf club that, notably, was not bent or missing the putter head. Kela and Weaver then followed the others into the alley at 9:45 p.m.

Detective Reeves labeled the next segment of the footage "during the incident." This portion of the video shows the group's activities at 9:52 p.m., when Ramirez returned from the alley prior to the rest of the group once Lashekka arrived back at the residence. Weaver, Kela, and K.G. returned to the carport from the alley at 9:57 p.m., and the golf club Weaver was carrying appeared to be bent and broken. Appellant and Farquar ran back into the carport area a few seconds later, and Appellant showed K.G. his hands. Kela, Weaver, and K.G. went back into the residence. Appellant got into the pickup with Farquar after retrieving the items he had emptied from his pockets, and the two then drove away at 9:58 p.m.

---

[1]Farquar was deceased at the time of trial.

The video labeled "after the incident" picks up again at 10:05 p.m.; notably, the 9-1-1 call reporting Riojas in the alley was placed at 10:04 p.m. Kela and Weaver are shown leaving the residence at 10:10 p.m. Lashekka and Ramirez left the residence and walked back into the alley at 10:12 p.m., and police reported seeing them and telling them to leave. They walked back into the carport area from the front of the house at 10:17 p.m., and after speaking outside for a moment, they entered the house through the back door; the video ends shortly after.

Because Riojas was never depicted on the footage after arriving home, and Harrell was never shown to be present at all, Detective Reeves questioned K.G.'s statement that Riojas left with Harrell out of the back door that night. Detective Reeves requested to speak with K.G. again, and he returned to the police station for a second interview at approximately 4:30 p.m. on September 14.

Just as the interview commenced, K.G. apologized for not telling the truth in his previous interview. He claimed that he had heard an argument between Lashekka and Roijas, and that he and Ramirez had broken up a fight between the two after Riojas had hit Lashekka in the face. K.G. called his sister, Kela, and told her to bring Appellant and Weaver over to the house because "[Riojas] just put his hands on Mom." After they arrived, he and Ramirez explained what had happened, and K.G. said that Appellant was "tripping out" wanting to know where Riojas was. They went into the alley to find Riojas but came back after failing to find him. K.G. said that Weaver retrieved a golf club from the house, and he, Kela, and Weaver followed Appellant back into the alley.

Once in the alley, they ran into a neighbor who told them that he had seen a drunk man squatting near his dumpster. They continued their search, and after spotting Riojas, Appellant, Weaver, and K.G. began running after him. They eventually caught up, and Riojas and Appellant began fighting. During his trial testimony, K.G. claimed that, after he heard the first punch, he got scared and ran

5

back to the house. However, in his interview with Detective Reeves, he stated that he witnessed Appellant stab Riojas twice; the first stab was somewhere around his face and the second was on his body. He also told Detective Reeves that he saw Weaver hit Riojas in the back with the golf club twice. He confirmed that the incident took place next to the storage building in the alley.

After witnessing the first stab, K.G. told Detective Reeves that he began backing up toward the house. When Appellant finally came back to the carport, he told K.G. to go clean his hands. K.G. also stated that he observed blood on Appellant's hands. K.G. stated that Weaver gave the golf club to Ramirez and told him to "do something with [it]," and Ramirez put the club in Lashekka's room. K.G. went to sleep until someone came into his room and woke him up. During his testimony at trial, K.G. maintained that he could not remember the incident or his statement to Detective Reeves during his second interview.

Weaver was also interviewed after the incident and testified at trial. Weaver's interview and testimony about the incident was consistent with the story that K.G. had relayed to Detective Reeves in his interview. Weaver stated that, when the group caught up with Riojas, he was stumbling and asked Appellant several times if "[he] really want[ed] to do this." The two then began fighting, and eventually, both fell into the storage building. Riojas bent over, and Weaver hit him twice in the lower back with the golf club; he stopped when Riojas said that he was done fighting. Weaver stated that the group then started to walk back to Lashekka's house, but Appellant turned back and started toward Riojas again. Appellant hit Riojas, causing him to fall; Weaver stated that this was when he was certain that Appellant began to stab Riojas. He testified that it was possible that Appellant had begun stabbing Riojas earlier in the fight because Riojas appeared "wet" prior to the second time that Appellant engaged with him. Weaver stated that Appellant was stabbing Riojas in the face when Kela ran over to pull him off. Weaver, Kela, and K.G. then ran

back to the house and into Lashekka's bedroom. Weaver gave the golf club to Ramirez, and he and Kela left the residence and returned to their home. Weaver testified that when Appellant returned home, he had a six-inch, fixed-blade, gold knife with blood on it that he cleaned after he arrived.

Kela also testified, and her version of the incident up to the stabbing was consistent with the others. She initially denied having seen Appellant hit Riojas during her testimony, but she later confirmed that she had told Detective Reeves that once the fistfight was over, she saw Appellant turn around and stab Riojas.

A neighbor testified that he saw the group in the alley that night after going to investigate a noise his wife heard. When he observed Riojas lying on the ground, he called out to the group, but they were already heading in the other direction. Upon further investigation, he realized that Riojas was covered in blood, so he called 9-1-1.

A forensic pathologist testified that Riojas had died from blood accumulation in the sac that encases the heart resulting from a stab wound to the left chest. Riojas had a total of forty-one sharp force injuries to his body with wounds on his hands, chest, back, and head. One of the wounds to his head was inflicted with enough force to fracture his skull and pierce his brain. He was not found to have other superficial injuries to his body such as bruises, contusions, or abrasions, but he did have defensive wounds on his wrists and hands. The toxicology report showed that Riojas had a blood alcohol level of .177.

Bloodstains were found on the front passenger door of Farquar's vehicle, but the blood was never confirmed to belong to Riojas. Appellant was arrested on the evening of September 15.

*Analysis*

In his sole issue on appeal, Appellant challenges the sufficiency of the evidence to support his conviction for murder. He asserts that the evidence at trial

was insufficient to prove that he was the sole individual that caused Roijas's death. Specifically, he contends that the testimony of eyewitnesses was inconsistent and self-serving and that the physical and circumstantial evidence of his participation in the murder was lacking.

We review a challenge to the sufficiency of the evidence under the standard of review set forth in *Jackson v. Virginia*, 443 U.S. 307 (1979). *Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010); *Polk v. State*, 337 S.W.3d 286, 288–89 (Tex. App.—Eastland 2010, pet. ref'd). Under the *Jackson* standard, we review all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319; *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

When conducting a sufficiency review, we defer to the factfinder's role as the sole judge of the witnesses' credibility and the weight their testimony is to be afforded. TEX. CODE CRIM. PROC. ANN. art. 38.04 (West 1979); *Brooks*, 323 S.W.3d at 899. This standard accounts for the factfinder's duty to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict and defer to that determination. *Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778.

It is not necessary that the evidence directly proves the defendant's guilt; circumstantial evidence is as probative as direct evidence in establishing a defendant's guilt, and circumstantial evidence can alone be sufficient to establish guilt. *Carrizales v. State*, 414 S.W.3d 737, 742 (Tex. Crim. App. 2013) (citing *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)). Each fact need not point directly and independently to guilt if the cumulative force of all incriminating

circumstances is sufficient to support the conviction. *Hooper*, 214 S.W.3d at 13. Because evidence must be considered cumulatively, appellate courts are not permitted to use a "divide and conquer" strategy for evaluating the sufficiency of the evidence. *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015). Instead, appellate courts must consider the cumulative force of all the evidence. *Villa v. State*, 514 S.W.3d 227, 232 (Tex. Crim. App. 2017).

As relevant to this appeal, a person commits the offense of murder if the person "intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual." PENAL § 19.02(b)(2). The indictment alleged that Appellant:

> with intent to cause serious bodily injury to an individual, namely, [Riojas], hereinafter styled the complainant, commit[ted] an act clearly dangerous to human life that caused the death of the complainant by stabbing the victim with a sharp object.

We first note that direct physical evidence linking the accused to the crime charged is not necessary to support a conviction. *See Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016) (Identity and criminal culpability may be proved through circumstantial evidence, and reasonable inferences drawn therefrom, alone, so that "lack of direct evidence is not dispositive of the issue of guilt."). While the jury was free to consider the absence of such evidence, it does not detract from the legal sufficiency of the evidence the jury did hear. *See id*. Additionally, there is evidence that Appellant cleaned the knife that he purportedly used, and that he had ample opportunity to dispose of it and his clothes because he was not arrested until two days later.

Further, "[i]t is an established rule in homicides that if the act of the defendant alleged in the indictment contributed to the death of the deceased, he is responsible, though other contributing causes existed." *Fountain v. State*, 401 S.W.3d 344, 358 (Tex. App.—Houston [14th Dist.] 2013, pet. ref'd) (citing *More v. State*, 692 S.W.2d

9

912, 920 (Tex. App.—Houston [14th Dist.] 1985, pet. ref'd)). "A person is criminally responsible if the result would not have occurred but for his conduct, operating either alone or concurrently with another cause, unless the concurrent cause was clearly sufficient to produce the result and the conduct of the actor clearly insufficient." PENAL § 6.04(a) (West 2021).

Here, there is ample evidence in the record that supports Appellant's conviction for murder as charged in the indictment. The forensic pathologist testified that the injury that caused Riojas's death was a sharp-force injury to his chest. Weaver provided a first-hand account of the altercation that took place between Riojas and Appellant in both his trial testimony and interview with Detective Reeves, and he consistently maintained that he witnessed Appellant stab Riojas. His statement that Appellant stabbed Riojas in the face is consistent with wounds found on Riojas. He also stated that he witnessed Appellant cleaning blood from a six-inch, fixed-blade knife once they arrived back at their residence. Additionally, Kela confirmed during her testimony that she had told Detective Reeves that she had seen Appellant stab Riojas as well.

Though K.G. testified at trial that he could not recall the events from September 13, he gave an account during his interview with Detective Reeves that was consistent with the testimony of Weaver. The location where K.G. claimed to see Appellant stab Riojas is also consistent with the location of several of Riojas's wounds.

The events depicted in the security camera footage from the night of the incident are explained by the testimony and interviews of Weaver, K.G., and Kela. In line with their accounts, Appellant arrived at the home on the night of the incident between Lashekka and Riojas. He engaged with K.G. and Ramirez before going into the alley where Riojas was later found. He then ran from the alley back to the carport and left the residence minutes before the 9-1-1 call reporting Riojas's body.

To the extent there were inconsistencies in the witnesses' various accounts, it was the jury's role to resolve those conflicts, and we defer to its resolution in support of the conviction. *See Jackson*, 443 U.S. at 326; *Clayton*, 235 S.W.3d at 778. Considering all the evidence in the light most favorable to the verdict, we conclude that the jury could reasonably infer that Appellant intended to cause Riojas serious bodily injury and committed an act clearly dangerous to human life by stabbing him with a sharp object, causing his death, as alleged in the indictment. Therefore, Appellant's sole issue is overruled.

*This Court's Ruling*

We affirm the judgment of the trial court.


JOHN M. BAILEY
CHIEF JUSTICE


July 23, 2026

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.